IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOE MASON ALLEN                                                                       PETITIONER

v.                              Civil No. 5:22-cv-05086

STATE OF ARKANSAS                                                                   RESPONDENT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Petition[1] under 28 U.S.C. § 2241 for Writ of Habeas Corpus by Joe Mason Allen ("Allen") a person in state custody. (ECF No.1). The Respondent has not been directed to file a response and for reasons set forth below, none is necessary.

### I.     BACKGROUND

The Petition concerns Allen's state criminal cases pending before the Circuit Court of Washington County, Arkansas.[2]   There are five such cases.

- The first case, 72CR-19-485-6, was filed on February 19, 2019.  The criminal information charges Allen with one count of possession of an opiate drug; one count of tampering with physical evidence; one misdemeanor count of possession of marijuana; and one misdemeanor count of refusal to submit to arrest.  Allen was appointed a public defender.  When he was arraigned, a trial date was scheduled for

---

[1] The document filed by Allen was entitled a writ of prohibition.  However, "[a] writ of prohibition is an extraordinary form of relief that is available to correct a clear error of law where the aggrieved party has no other adequate means to attain the desired relief." *In re Robinson Helicopter Co., Inc.,* 818 F.3d 773, 774 (8th Cir. 2016).  Here, Allen has other means of attaining the desired relief.  His petition for writ of prohibition has therefore been construed as a § 2241 motion for writ of habeas corpus.
[2] The Administrative Office of the Arkansas Courts maintains a Public Court Connect Website—https://caseinfo.arcourts.gov.  The information about Allen's pending criminal cases was obtained from this website.

May 2, 2019. The trial date was continued twice at the request of the State and scheduled for December 16, 2019.

- Allen's second case, 72CR-19-2774-6, was filed on October 23, 2019. The felony information charged Allen with one count of possession of methamphetamine; one count of possession of Ecstasy; and one count of possession of drug paraphernalia. Allen again was appointed a public defender, and at arraignment, his trial was scheduled for December 16, 2019.

- A third case, 72CR-19-2781-6, was filed on October 23, 2019. In this instance, Allen was charged in a 3-count criminal information with possession of methamphetamine; possession of Ecstasy; and a misdemeanor count of resisting arrest. When arraigned, Allen's trial date on these charges was scheduled for December 16, 2019.

- New charges were filed against Allen in a fourth case, 72CR-19-3018-6, on November 19, 2019. Allen was charged with terroristic threatening in the first degree. An amended criminal information was filed on December 3, 2019, adding a charge of failure to appear for his arraignment.

- Allen was also scheduled to appear in Court on December 16, 2019, on revocation charges in three of Allen's earlier cases: 72CR-17-1326-6; 72CR-17-2456-6; and 72CR-18-375-6. On December 16, 2019, when Allen failed to appear for the revocation hearing, an FTA warrant issued. A fifth case, 72CR-19-3392-6, was filed on December 31, 2019, charging Allen with failure to appear on December 16, 2019, for his revocation hearing in 72CR-17-1326-6, 72CR-17-2456-6, and 72CR-18-375-6.

- An amended information was filed in 72CR-19-2781-6 (Allen's 3rd case) on December

31, 2019, charging Allen with one count of possession of methamphetamine; one count of possession of Ecstasy; one misdemeanor count of resisting arrest; and one count of failure to appear. The failure to appear count stemmed from Allen's failing to appear for trial on December 16, 2019, in cases 72CR-19-2781-6, 72CR-19-2774-6, and 72CR-19-485-6.

- An amended felony information was filed in 72CR-19-2774-6 (Allen's 2nd case) on March 6, 2020, charging Allen with two counts of delivery of methamphetamine; one count of possession or drug paraphernalia; one count of unlawful use of a communication device; one count of possession of Ecstasy; one count of possession of codeine; and one count charging Allen as a habitual offender.

From May 7, 2020, to the present date, these five state court criminal cases have proceeded as one. On May 7, 2020, and again on October 12, 2020, continuance orders were the result of the COVID-19 pandemic. On May 6, 2021, Allen filed a notice of intent to rely on the defense of mental disease or defect, and an amended notice was filed on May 11, 2021. On June 30, 2021, orders for an examination to determine Allen's fitness to proceed to trial and to determine criminal responsibility were entered.[3] Delay in performance of Allen's examination engendered five separate continuances: May 18, 2021, August 2, 2021, October 27, 2021, January 18, 2022, and April 20, 2022. Each of these five continuance orders contain the signatures of counsel for the State and Allen's court-appointed counsel. Allen's cases are currently scheduled for trial on August 5, 2022.

Beginning in late October of 2021, Allen – who remains represented by counsel but began

---

[3] These orders appear to have been filed only in 72CR-19-3392-6. The orders, however, contain all five case numbers.

acting *pro se* – filed a series of notices, letters, and motions involving a variety of topics. In these myriad filings, Allen challenged whether the laws under which he was being charged were enacted by constitutionally qualified persons; whether the judicial and executive officers were constitutionally qualified to prosecute and adjudicate the laws of Arkansas; and whether the courts properly exercised in personam, subject matter, and territorial jurisdiction. Allen requested a complete accounting of all case entries and request for discovery of all evidence; sought a notice that Allen is not endangered, impaired, incapacitated, or incompetent; and disagreed with the State and its agencies that he needs a guardian of his person or estate. Allen submitted an affidavit of status averring that he cannot be an artificial person and is exempt from any and all identification, treatment, and requirements of any process, law, code, or statute. Allen asserted he was an incompetent minor when he pledged his allegiance to the "United States Corporation;" claimed that the "United States Corporation" pledged its citizens' birth certificates to pay the national debt; challenged notes issued by the Federal Reserve constitute an indebtedness on the part of the Treasury that may only be paid in gold or silver; and made notification for a declaration of independence.

On January 26, 2022, Allen filed a petition for writ of habeas corpus and motion for an omnibus hearing. On March 4, 2022, Allen filed a motion to dismiss. Both pleadings seek dismissal of the criminal cases on the grounds that Allen has been in custody since his arrest in February of 2020 without being brought to trial. Allen contends his continuous custody without a trial violates his rights to a speedy trial under the United States Constitution, the Constitution of the State of Arkansas, and the Arkansas Rules of Criminal Procedure. Allen also asserts that he is being held on an excessive bond of $275,000. In his motion to dismiss, Allen declares, *inter alia,* his freedom and independence from the United States; that the United States has been bankrupt

since March 9, 1933; that the United States is operating under the special Maritime and Territorial jurisdiction; and that he is incapacitated because he is a minority in the detention center and undergoing treatment for a nervous disease. Allen seeks appointment of a guardian. There is no indication in the state court that a guardian was appointed; nevertheless, Allen subsequently files a motion to terminate the guardianship.

On May 26, 2022, an order of transport was entered for Allen's forensic evaluation which is scheduled for 9:30 a.m. on July 5, 2022, at the Ozark Guidance Center in Springdale, Arkansas. As noted above, Allen's five criminal cases are scheduled for jury trial on August 5, 2022.

## II.   DISCUSSION

Section 2241 extends the writ of habeas corpus to pretrial detainees "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Palmer v. Clarke,* 961 F.2d 771, 774 (8th Cir. 1992). Before a court will consider the claims of a pretrial detainee, the detainee must be in custody, and he must have exhausted his available state law remedies. *Moore v. United States,* 875 F. Supp. 620, 622 (D. Neb. 1994). Clearly, Allen is in custody. Thus, the first inquiry is whether Allen has exhausted his state law remedies.

### A.   Exhaustion

In § 2241 cases, the exhaustion requirement is not statutory or jurisdictional but is a judicially created prerequisite. *Lueth v. Beach,* 498 F.3d 795, 797 n.3 (8th Cir. 2007), *cert. denied,* 552 U.S. 1121 (2008). As stated by the Supreme Court in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484 (1973):

> The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement. It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine

> that called it into existence. As applied in our earlier decisions, the doctrine preserves the role of the state courts in the application and enforcement of federal law. Early federal intervention in state criminal proceedings would tend to remove federal questions from the state courts, isolate those courts from constitutional issues, and thereby remove their understanding of and hospitality to federally protected interests. Second, the doctrine preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings. It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts.

*Id.* at 490-91 (cleaned up).

In determining whether a pretrial detainee has exhausted his state remedies, it is important to look at both the grounds raised, and the relief sought. *Braden*, 410 U.S. at 489. "[F]ederal habeas corpus does not lie, absent special circumstances, to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." *Id.* (cleaned up). In *Braden,* the Supreme Court allowed a denial of speedy trial claim to proceed where there was an interstate detainer and the petitioner sought to "demand enforcement of the Commonwealth's affirmative constitutional obligation to bring him promptly to trial." *Id.* at 489-90. The evidence showed that he had made repeated demands for trial in the courts of Kentucky. *Id.* at 490. Under the circumstance, the Supreme Court held he had exhausted his state remedies. *Id.* at 489.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Arkansas Speedy Trial Act provides that "[a]ny defendant charged with an offense and incarcerated in a city or county jail in this state pending trial shall be released on his own recognizance if not brought to trial within nine (9) months from the time provided in Rule

6

28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3." Ark. R. Crim. P. 28.1(a).   The applicable time period at issue in this case "shall commence running from the date of arrest or service of summons."  Ark. R. Crim. P. 28.2(a).   Under Rule 28.3(a) and (h) the court may by written order or docket entry exclude any period resulting "from other proceedings concerning the defendant, including . . . an examination and hearing on the competency of the defendant" and "other periods of delay for good cause." Under Rule 30.1(b), "[a]n incarcerated defendant not brought to trial before the running of the time for trial as provided by Rules 28.1-28.3 shall not be entitled to absolute discharge . . . but shall be recognized or released on an order to appear."   Ark. R. Crim. P. 30.1(b).   The filing of a motion to dismiss is the correct way to raise a speedy trial issue.  *Wade v. State,* 308 S.W.3d 178 (Ark. App. 2009).   The issue may also be raised on direct appeal.[4]   *Id.*   As noted previously, Allen has a pending *pro se* motion to dismiss pending before the Washington County Circuit Court.

      Here, Allen's own conduct in failing to appear for his revocation charges and for trial on cases 72CR-19-485-6, 72CR-19-2774-6, and 72CR-19-2781-6 on December 16, 2019, caused the first delays in resolution of three of Allen's criminal cases.   In December 2019, Allen was free on bond and thus, three of his cases would have been resolved by trial before the end of 2019 by simply showing up. Instead, Allen failed to appear, warrants were issued, Allen was located and arrested, and his bail increased.

      Within 90 days, additional delays were caused by the unexpected COVID-19 pandemic. Beginning on March 17, 2020, the Arkansas Supreme Court announced implementation of

---

[4] In Arkansas, "[a] petitioner's speedy-trial-violation claim is not within the purview of a habeas proceeding because it is a claim of trial error that does not implicate either the facial validity of the judgment or the jurisdiction of the trial court. *Wade v. Payne,* 623 S.W.3d 568, 571 (Ark. 2021).

7

precautionary measures due to the pandemic, including suspension of in-person proceedings, and ordered that – for criminal trials – any delay for speedy-trial purposes be deemed presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h).  *See In re Response to the COVID-19 Pandemic,* 2020 Ark. 116 (per curiam).   Jury trials were scheduled to begin again on June 30, 2020.  *See In re Response to the COVID-19 Pandemic,* 2020 Ark. 249 (per curium).

In November 2020, jury trials not already commenced were suspended again until January 15, 2021.  *In re Response to the COVID-19 Pandemic,* 2020 Ark. 384 (per curiam).   In this per curiam opinion, the Arkansas Supreme Court acknowledged "that there are defendants awaiting trial beyond twelve months," and ordered criminal courts review their dockets for criminal cases that are outstanding for more than twelve months where the defendant either did not receive bond or has not met bond and evaluate reasons to reconsider bond. *Id.* The Supreme Court repeated that for criminal trials, delays due to the precautions implemented against the COVID-19 pandemic shall presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h) and shall constitute an excluded period for speedy trial purposes.  *Id.*

Arkansas' suspension of jury trials was extended to February 28, 2021.  *In re Response to the COVID-19 Pandemic*, 2021 Ark. 1 (per curiam). Another extension, through April 30, 2021, was ordered on February 12, 2021.  *In re Response to the COVID-19 Pandemic,* 2021 Ark. 30 (per curiam).   Jury trials resumed on May 1, 2021.   *In re Response to COVID-19 Pandemic*, 2021 Ark. 72 (per curiam).   In total, delays attributable to the COVID-19 pandemic totaled one year, one month, and fourteen days.

From May 6, 2021 (the date of Allen's notice) to the present date, the delay of Allen's state court jury trial has been due to his notice of intent to rely on the defense of mental disease or defect. The forensic examination is currently scheduled for July 5, 2022, and jury trial scheduled for

8

August 5, 2022. Assuming the trial proceeds as scheduled, Allen's case will have been delayed one year, two months, and thirty days due to the need for a forensic examination of Allen.

This case differs significantly from the speedy trial claim which was allowed to proceed in *Braden*. Here, Allen is in the custody of the State who has brought charges against him; his criminal cases, delayed as noted herein, are currently scheduled for trial. It bears repeating that these periods of prior delay were due to (a) Allen's failure to appear for trial on December 16, 2019; (b) the COVID-19 pandemic; and (c) the requirement that Allen undergo a forensic examination related to his notice of intent to rely on the defense of mental disease or defect. The forensic examination has now been scheduled to occur prior to the current trial date. As noted by the Supreme Court in *Braden,* petitioner may assert "a speedy trial defense [in state court] when, and if, he is finally brought to trial." *Braden,* 410 U.S. at 489. Thus, Allen has not "exhausted all available state remedies as a prelude to this action." *Id.* At this time, Allen cannot ask the federal courts for a habeas corpus ruling that would result in the dismissal of his state law claims. The Court therefore makes no ruling on the merits of Allen's speedy trial claim.

    **B. The Doctrine of Abstention**

Alternatively, to the extent Allen raises issues that may be resolved by trial or other state process, his claims are barred by the *Younger* abstention doctrine. In *Younger v. Harris*, 401 U.S. 37 (1971), "the Supreme Court held that, consistent with our nation's commitment to the principles of comity and federalism, a federal court should abstain from exercising jurisdiction in cases where there is a parallel, pending state criminal proceeding, so long as certain conditions are met." *Minnesota Living Assistance, Inc. v. Peterson,* 899 F.3d 548, 551 (8th Cir. 2018). The Court should abstain from hearing a case when "(1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate

opportunity to raise the federal questions presented." *Norwood v. Dickey,* 409 F.3d 901, 903 (8th Cir. 2005) (*citing Fuller v. Ulland,* 76 F.3d 957, 959 (8th Cir. 1996)).

There are ongoing state judicial proceedings pending against Allen, which implicate Arkansas' important state interest in enforcing its criminal laws, and those pending state criminal proceedings afford Allen and his counsel adequate opportunities to raise all his constitutional questions. While Allen has sent a series of *pro se* letters, notices, motions (including a pending *pro se* motion to dismiss), petitions, writs, letters, and applications to the state court, he is represented by counsel in his criminal cases and to date, has not filed a motion to represent himself in his criminal cases.

While entirely understandable that Allen is frustrated by the delays caused by the COVID-19 pandemic, this is not the type of extraordinary circumstance allowing this federal court to intervene in state court criminal proceedings. The COVID-19 pandemic has caused enumerable delays in both state and federal court proceedings and caused disruption in virtually all aspects of life.[5] And as noted, had Allen conformed his conduct to the terms and conditions of his pre-trial release, and appeared for pre-pandemic trial on December 16, 2019, there would have been no delay caused by COVID-19 in three of his cases. The remaining delays have resulted from the notice of intent to rely on the defense of mental disease or defect filed by Allen's attorney and the concordant need for performance of a forensic examination. These are not "unusual circumstances" permitting this Court to intervene. Pursuant to *Younger,* Allen must raise his claims of Constitutional violations in his state court criminal cases.

---

[5] In *Kurtenbach v. Howell,* 509 F. Supp. 3d 1145, 1152 (D. S.D. 2020), the court found that the COVID-19 pandemic did not justify a delay of 18-months.

## IV. CONCLUSION

For these reasons, it is recommended that Allen's Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a person in state custody (ECF No. 1) be **DISMISSED WITHOUT PREJUDICE.**

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §§ 2253(b) & (c)(2); *see Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000). A "substantial showing" is a showing that "issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (cleaned up). Based upon the above analysis of Allen's § 2241 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, **recommends that a certificate of appealability be denied.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of June 2022.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE